RENDERED: APRIL 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0818-MR

CHRIS MEADOWS                                                    APPELLANT

v.
APPEAL FROM MAGOFFIN CIRCUIT COURT
HONORABLE KIM C. CHILDERS, JUDGE
ACTION NO. 20-CI-00287

JACOB RISNER                                                      APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; KAREM AND TAYLOR, JUDGES.

THOMPSON, CHIEF JUDGE: Chris Meadows appeals from an order of the
Magoffin Circuit Court which denied his motion for qualified official immunity.
After reviewing the record and arguments of the parties, we conclude that
Appellant is entitled to immunity on some claims but is not entitled to immunity on
one claim; therefore, we affirm in part, reverse in part, and remand for further
proceedings.

## FACTS AND PROCEDURAL HISTORY

On November 6, 2019, Jacob Risner, a high school student, got off a school bus to attend class at the Magoffin Career and Technical Center. While a separate building from the Magoffin County High School, the technical center is still part of that campus. After Appellee disembarked the bus, he ran to the entrance of the school. It is alleged that as he got to the door, he tripped over a doormat and fell through a pane of glass that was surrounding the door. Appellee was injured from this fall. Appellee alleged that the doormat was old and frayed, causing it to bunch up around the edges and that is what caused him to trip over it.

At the time of the injury, Chris Meadows was the principal of Magoffin County High School and the Magoffin Career and Technical Center. Appellee brought suit against Appellant, amongst others. Appellee alleged that Appellant failed to supervise the students as they got off the bus and entered the school and failed to protect him from injury. After some discovery, Appellant moved for summary judgment alleging that he was immune from suit due to qualified official immunity. The trial court denied the motion and this appeal followed.

## ANALYSIS

Before we begin with our analysis of qualified official immunity, we must first note that this is an appeal from an order denying summary judgment.

Generally, an order denying summary judgment is interlocutory and cannot be appealed; however, when the order is one denying an immunity defense, an appeal is allowed to address the immunity issue only. *Commonwealth v. Samaritan All., LLC*, 439 S.W.3d 757, 760 (Ky. App. 2014).

On appeal, Appellant argues that he was entitled to qualified official immunity because his duties in relation to supervision and protecting students are discretionary.

> [W]hen sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority.

*Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citations omitted).

> Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one requiring only obedience to the orders of others, or when the officer's duty is absolute, certain and imperative, involving merely execution of a specific act arising from fixed and designated facts.

*James v. Wilson*, 95 S.W.3d 875, 905 (Ky. App. 2002) (citation omitted).

> The question of when a task is ministerial versus discretionary has long plagued litigants and the courts. Generally, a governmental employee can be held

-3-

personally liable for negligently failing to perform or negligently performing a ministerial act. Part of the rationale for allowing this individual liability is that a governmental agent can rightfully be expected to adequately perform the governmental function required by the type of job he does. To the extent his job requires certain and specific acts, the governmental function is thwarted when he fails to do or negligently performs the required acts. But when performance of the job allows for the governmental employee to make a judgment call, or set a policy, the fact that there is uncertainty as to what acts will best fulfill the governmental purpose has resulted in immunity being extended to those acts where the governmental employee must exercise discretion. To some extent, this says that governing cannot be a tort, but failing to properly carry out the government's commands when the acts are known and certain can be.

Stated another way, properly performing a ministerial act cannot be tortious, but negligently performing it, or negligently failing to perform it, can be. And the law provides no immunity for such acts, meaning the state employee can be sued in court. Negligently performing, or negligently failing to perform, a discretionary act cannot give rise to tort liability, because our law gives qualified immunity to those who must take the risk of acting in a discretionary manner. *Whether* the employee's act is discretionary, and not ministerial, is the qualifier that must be determined before qualified immunity is granted to the governmental employee.

The distinction between ministerial and discretionary, of course, is where courts and litigants seem to have the most trouble. The decision rests not on the status or title of the officer or employee, but on the function performed. Indeed, most immunity issues are resolved by examining the nature of the functions with which a particular official or class of officials has been lawfully entrusted.

At its most basic, a ministerial act is one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts. That a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature. And an act is not necessarily outside the ministerial realm just because the officer performing it has some discretion with respect to the means or method to be employed. . . . In reality, a ministerial act or function is one that the government employee must do without regard to his or her own judgment or opinion concerning the propriety of the act to be performed. In other words, if the employee has no choice but to do the act, it is ministerial.

On the other hand, a discretionary act is usually described as one calling for a good faith judgment call[ ] made in a legally uncertain environment. It is an act involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment. Given the volume of litigation on the subject, it is clear that these definitions are not a model of clarity. No doubt, this is due to their having been written in general, somewhat sweeping terms.

But at their core, discretionary acts are those involving quasi-judicial or policy-making decisions. Indeed, the premise underlying extending the state's own immunity down to it agencies and, in some instances, officers and employees is that courts should not be called upon to pass judgment on policy decisions made by members of coordinate branches of government in the context of tort actions, because such actions furnish an inadequate crucible for testing the merits of social, political or economic policy. But the discretionary category is still somewhat broader, encompassing the kind of discretion exercised at the operational level rather than exclusively at the policy-making or planning level.

The operational level, of course, is not direct service or "ground" level.

The distinction between discretionary acts and mandatory acts is essentially the difference between making higher-level decisions and giving orders to effectuate those decisions, and simply following orders. Or, as we have stated, "Promulgation of rules is a discretionary function; enforcement of those rules is a ministerial function." *Williams v. Kentucky Dept. of Educ.*, 113 S.W.3d 145, 150 (Ky. 2003).

Thus, a ministerial act is a direct and mandatory act, and if it is properly performed there simply is no tort. But if such an act is omitted, or performed negligently, then that governmental employee has *no* immunity, and can be sued individually for his failure to act, or negligence in acting that causes harm. Of course, whether a ministerial act was performed properly, i.e., non-negligently, is a separate question from whether the act is ministerial, and is usually reserved for a jury. Qualified immunity applies only to discretionary acts. And that immunity is more than just a defense; it alleviates the employee's or officer's need even to defend the suit, which is to be dismissed.

*Marson v. Thomason*, 438 S.W.3d 292, 296-98 (Ky. 2014) (emphasis in original) (internal quotation marks and citations omitted). "The issue of school officials' entitlement to qualified official immunity is a matter of law which we review *de novo*." *Ritchie v. Turner*, 559 S.W.3d 822, 830 (Ky. 2018) (citation omitted).

Appellee raised four claims regarding Appellant's alleged negligence: negligent supervision of the students during bus drop offs, failing to protect Appellee from safety hazards, failing to put a safety guard over the glass pane

Appellee fell through, and failing to do a monthly maintenance inspection. The trial court denied Appellant's motion for summary judgment by finding that there were issues of material fact surrounding the maintenance inspection.

We agree with Appellant that he was entitled to immunity for some of the claims raised.

> Principals do have a duty to provide a safe school environment, but they are not insurers of children's safety. They must only be reasonably diligent in this task. Because that task is so situation specific, and because it requires judgment rather than a fixed, routine performance, looking out for children's safety is a discretionary function for a principal, exercised most often by establishing and implementing safety policies and procedures.

*Marson*, 438 S.W.3d at 299.

Based on *Marson*, we believe Appellee's general claims of negligent supervision of the students and failing to provide a safe environment are covered by qualified official immunity. Appellant was not present when Appellee was injured. Appellant had delegated to his vice principal the responsibility of looking after the students at the technical center and gave the vice principal authority to assign teachers to supervise the students. The vice principal did so, and teachers were present when the students were leaving the bus and entering the school. By delegating to the vice principal, he satisfied his discretionary functions of student supervision and protection. Furthermore, there we find no evidence that Appellant

acted outside the scope of his employment or that he acted in bad faith. Appellant delegated supervisory and protection duties to appropriate people. Appellant is entitled to qualified official immunity for these claims.

As to the claim that Appellant failed to put a safety device over the glass surrounding the door, this too is a discretionary safety issue. Appellee cites to no law, requirement, or directive that requires a certain type of glass be used in school buildings or that the principal is responsible for such issues. We believe this claim also falls into the general student protection gamut; therefore, it is a discretionary act for which Appellant is entitled to immunity.

The final claim revolves around a maintenance requirement. Part of Appellant's job requirement was that he perform a monthly maintenance inspection of the schools and provide a written report of his findings to the Superintendent. Appellant admitted in his deposition that he did not perform this monthly inspection. Instead, he claimed that the Superintendent allowed him to submit maintenance requests as they came in and that he did not need to perform the monthly maintenance inspection. Appellee alleges that had Appellant performed the monthly maintenance inspection, Appellant may have noticed the doormat needing replacement and thus prevented his fall. It was this issue that the trial court believed precluded immunity and summary judgment.

We agree with the trial court as to this issue. The monthly maintenance inspection and report was a part of Appellant's job description which he admits he did not perform. While Appellant claims the Superintendent no longer required the inspection and report, this is inadmissible hearsay. *House v. Deutsche Bank National Tr. as Tr. for Wamu Series 2007-HE1 Tr.*, 624 S.W.3d 736, 744 (Ky. App. 2021); *Walker v. Commonwealth*, 503 S.W.3d 165, 177 (Ky. App. 2016). In addition, "principals are not generally required to do maintenance duties, although specific instructions could make such duties required and thus ministerial." *Marson*, 438 S.W.3d at 299 (citation omitted). Here, Appellant was required to do a monthly maintenance inspection and report. This was a requirement set forth by his job description; therefore, it was a ministerial directive. There is evidence suggesting that this directive was rescinded; however, it is unproven at this stage. Since Appellant failed in his ministerial duty of a monthly maintenance inspection, he is not entitled to qualified official immunity on this claim.

Appellant argues that his only duty to perform this inspection and write the report was to the Superintendent, not the students. He also claims that there is no guarantee such an inspection would have uncovered the allegedly defective doormat. We decline to address these arguments because they are issues concerning negligence, not immunity. Appellant may have valid defenses

regarding the negligence claims; however, they are not properly raised at this time. The only issue we are permitted to address at this time is qualified official immunity. *Samaritan All., LLC*, *supra*.

## **CONCLUSION**

Based on the foregoing, we conclude that Appellant is entitled to qualified official immunity on all claims except that he failed to perform a monthly maintenance inspection. The monthly inspection was a ministerial duty that he failed to complete, and all other claims revolved around discretionary acts; therefore, we affirm in part, reverse in part, and remand.

ALL CONCUR.

BRIEFS FOR APPELLANT:

John G. McNeill
Elizabeth A. Deener
Lexington, Kentucky

BRIEF FOR APPELLEE:

Kellie M. Collins
Lexington, Kentucky

John C. Collins
Salyersville, Kentucky